**McCULLOUGH TOOL COMPANY**

v.

**PAN GEO ATLAS CORP. et al.**

**Civ. A. No. 65-H-495.**

United States District Court
S. D. Texas,
Houston Division.

Feb. 24, 1969.

B. R. Pravel of Hayden, Pravel, Wilson & Matthews, Houston, Tex., for plaintiff.

James E. Weiler, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for corporate defendants.

Paul H. Johnson, Tulsa, Okl., for defendant Serge A. Scherbatskoy.

SINGLETON, District Judge.

*Memorandum and Order*

This is an action to recover damages for an alleged fraud perpetrated on plaintiff, McCullough Tool Company (McCullough), by defendants Pan Geo Atlas Corporation and PGAC Development Company (corporate defendants) and defendant Serge A. Scherbatskoy (Scherbatskoy). Jurisdiction is based on diversity of citizenship. Plaintiff is a citizen of California; the corporate defendants are citizens of Texas and Scherbatskoy is a citizen of Oklahoma.

McCullough alleges that in 1954 the corporate defendants fraudulently provoked, maintained, and conspired with Scherbatskoy to provoke and maintain Interference No. 87,456 in the United States Patent Office. The Interference was between the Scherbatskoy continuation-in-part application Serial No. 365,-499 ("Scherbatskoy continuation-in-part application"), which was assigned to the corporate defendants, and Pringle et al. United States Patent No. 2,686,266 (hereinafter referred to as the "Pringle Patent"), which is exclusively licensed to McCullough. McCullough asserts that Scherbatskoy derived the subject matter of the Interference counts from one Bruno Pontecorvo, and that the corporate defendants knew or should have known this. Accordingly, McCullough asserts that under these circumstances the institution in 1954 of Interference 87,456 and the maintenance of this Interference through August of 1963 was improper and fraudulent. On September 1, 1958, McCullough entered into a cross immunities agreement with the corporate defendants. McCullough seeks recission of this agreement on the basis of the alleged fraud perpetrated by the corporate defendants or on the basis of an alleged mutual mistake by the parties thereto in entering into the agreement.

The corporate defendants deny any fraud on their part in instituting and prosecuting Interference No. 87,456. They assert that there was in fact no derivation by Scherbatskoy from Pontecorvo. Alternatively they assert that at all times before August, 1963, when they abandoned prosecution of the Interference, they had in good faith believed that Scherbatskoy invented the subject matter of the counts of the Interference. It was only during August, 1963, over eight years after the Interference had been declared, that the corporate defendants had the slightest intimation that Scherbatskoy was not the inventor of the subject matter of the Interference counts, but that he had derived from Pontecorvo. The corporate defendants counterclaim for damages against McCullough for allegedly wrongfully inducing Scherbatskoy to aid and assist McCullough in preventing an appeal from the decision of the Patent Office in Interference No. 87,-456. The corporate defendants seek damages from both McCullough and Scherbatskoy for an alleged conspiracy to prevent them from appealing the decision of the Patent Office in said Interference.

Scherbatskoy denies that he derived the subject matter of the Interference counts from Pontecorvo, or anyone else, and he contends that his invention of the subject matter of the Interference counts preceded Pontecorvo as well as the effective conception date of the inventors of the Pringle et al. patent. Scherbatskoy has counterclaimed for damages against the corporate defendants on the alleged basis that the same charge in the corporate defendants' counterclaim was brought against Scherbatskoy by the corporate defendants in Civil Action No. 5962 (N.D.Okla.) and then dismissed with prejudice.

An Interference is an interparties patent office proceeding in which the Patent Office determines, as between the parties before it, who is the prior inventor of the invention involved. Baker, Outline of Patent Interference Practice 2, 3, (rev.ed.1964). Patent Office Rule 201 provides: "A. An Interference is a proceeding instituted for the purpose of determining the question of priority of invention between two or more parties claiming substantially the same patentable invention. * * * 37 CFR § 1.201."

Interference No. 87,456 related to priority of inventorship between the Pringle patent and the Scherbatskoy continuation-in-part application with respect to meters, including scintillation counters, which are devices useful in radioactivity well logging, as well as other fields. The counts of this particular Interference related to a meter, including a scintillation counter, which is an apparatus including a scintillation crystal, a photomultiplier tube, electronic amplification means, and indicating means for measuring gamma rays and neutrons in accordance with conventional radioactivity well logging techniques.

On December 27, 1954, following issuance of the Pringle patent, seventeen claims of the Pringle patent were copied into the pending Scherbatskoy continuation-in-part application, and the Patent Office was requested to declare an interference between the Scherbatskoy application and the Pringle patent. Scherbatskoy executed appropriate oaths pursuant to Patent Office Rules claiming inventorship; which oaths were sufficient under law to establish priority of invention relative to the effective filing date of the Pringle et al patent, and the Patent Office declared Interference No. 87,456 between the Scherbatskoy continuation-in-part application and the Pringle patent.

During the pendency of the Interference McCullough brought an infringement action against Well Surveys, Inc. See Well Surveys, Inc. v. McCullough Tool Co., 199 F.Supp. 374 (N.D.Okla. 1961), aff'd. 343 F.2d 381 (10th Cir. 1965), cert. denied, 383 U.S. 933, 86 S. Ct. 1061, 15 L.Ed.2d 851 (1966). The District Court held that if the claims of the Pringle patent (which were the same as the counts of Interference No. 87,456 involved in this litigation) were construed broadly they were invalid, but that the claims were valid only to the

extent that they cover apparatus capable of carrying out spectral measurement, i. e. radioactivity measurement in which not merely the intensity of the incident gamma radiation but also the energy of the radiation is recorded.

The Board of Interferences adopted this construction of the Pringle claims which were the counts in Interference 87,456, and on the basis of such construction held that the Scherbatskoy patent applications had not been shown to be operable as applied to spectral measurement (Scherbatskoy having taken no testimony on this); accordingly, awarded priority to Pringle. However, expert testimony in the present case is that the device described in the Scherbatskoy applications is operable.

The corporate defendants had until August 22, 1963 to file an appeal either to the United States District Court or to the Court of Customs and Patent Appeals. During this thirty-day period, Scherbatskoy urged the corporate defendants not to appeal, and when the corporate defendants continued their preparations to file an action in the District Court for a trial *de novo* of the issues of the Interference, Scherbatskoy wrote them a letter claiming that he was not the inventor of the issue counts of the interference; that he would testify adversely to the corporate defendants in any trial de novo, and that he would refuse to make any supplemental oath of inventorship. Scherbatskoy further telephoned the attorney for the corporate defendants. From this conversation the attorneys gained the impression that Scherbatskoy was not the inventor because he had derived the invention from another, one Bruno Pontecorvo. The corporate defendants thereupon determined not to exercise their right of appeal. On August 11, 1965, two years later, the present action was commenced.

On June 18, 1949, United States patent application, Serial No. 99,944 was filed in the name of Bruno Pontecorvo, the individual from whom Scherbatskoy is alleged by McCullough to have derived the subject matter of the counts of Inter-

ference 87,456. The Pontecorvo application was prepared initially by Dr. Jacob Neufeld (hereinafter referred to as Neufeld). The Scherbatskoy patent application was also prepared by Neufeld, and the Scherbatskoy patent application was prepared first. Since Pontecorvo was leaving the country and there was need for prompt filing of his application, it was sent to attorneys for filing. Meanwhile, the filing of the earlier-prepared Scherbatskoy application was delayed. The Scherbatskoy application was filed October 5, 1949, by Scherbatskoy, without the aid of an attorney. The law firm prosecuting the Pontecorvo application withdrew May 23, 1951 as attorneys following the journey of Pontecorvo to Russia. Scherbatskoy and Neufeld each owned an undivided interest in and to the Pontecorvo application and were notified of the withdrawal by the firm.

McCullough specifically charges the corporate defendants and Scherbatskoy with fraud in 1954 when Scherbatskoy signed the customary affidavits that he was the inventor of the subject matter of the counts of Interference 87,456 and the corporate defendants of fraud again in 1959 when one of the members of the corporate defendants law firm was requested to send a copy of the abandoned Pontecorvo application file to Scherbatskoy in that such attorneys should have made an inquiry with the means at hand to determine whether Scherbatskoy derived the subject matter of the counts of Interference 87,456 from Pontecorvo.

In order for McCullough to prevail in this action it must establish that Scherbatskoy derived the subject matter of the counts of Interference 87,456 from Pontecorvo and failing this, there is no fraud or mistake and McCullough's case must fall.

 I find that Scherbatskoy did not derive the subject matter of the Interference counts from Pontecorvo. I further find that the coexistence of the Scherbatskoy patent application and the Pontecorvo application would not suggest derivation. That while the two applications contain some common subject mat-

ter they were directed at different objects to be achieved by different means. Without there being anything in the two applications to suggest derivation, no duty to inquire concerning derivation ever arose on the part of the corporate defendants or their attorneys. I find that Scherbatskoy, by his conception document of May 10, 1943 (PGAC Exhibits 5, 202, 202a) disclosed each and every element called for by the counts of Interference 87,456; that this conception document was Scherbatskoy's own work and invention. This conception document was "witnessed and understood" by "J. Neufeld". The Scherbatskoy patent application and continuation-in-part application disclosed each and every element called for by the counts of Interference 87,456. The subject matter of these applications was Scherbatskoy's own work and invention. On April 1, 1949 Dr. Neufeld added a scintillation counter, similar to the May 10, 1948 conception document of Scherbatskoy, to the Pontecorvo application. Until the April 1, 1949 addition by Dr. Neufeld the Pontecorvo application was an insufficient disclosure document to support the issue counts of Interference 87,456. Even after the April 1, 1949 addition of the scintillation counter to the Pontecorvo application, the Scherbatskoy patent application and Pontecorvo application, while containing thereafter common subject matter, were in fact directed to different objects to be achieved by different means. A comparison of the Scherbatskoy patent or continuation-in-part applications with the Pontecorvo application would not lead a reasonable man to suspect derivation one from the other. Neither in 1954 when Scherbatskoy signed the affidavit that he was the inventor of the subject matter of the Interference 87,456 nor in 1959 when one of the members of the law firm representing the corporate defendants examined the abandoned Pontecorvo application would the subject matter, drawings, and disclosure of the Pontecorvo application have suggested to a reasonable man any derivation one from the the other.

■ I further find that there was no evidence of a fraudulent conspiracy between McCullough and Scherbatskoy in August, 1963 to deprive Pan Geo Atlas Corporation and PGAC Development Company of a meritorious appeal from the Board of Patent Appeals in connection with Interference 87,456. And I find that there is insufficient evidence to support the counterclaim of Scherbatskoy against the corporate defendants.

I conclude that there was no fraud in the prosecution of Interference 87,456 on the part of the corporate defendants or Scherbatskoy. There was no mistake of fact on the part of McCullough on the one hand and the corporate defendants on the other hand, in the execution of the cross immunities agreement dated September 1, 1958 among said parties. In the alternative, I find that there were no facts which were either known or should have been known to the corporate defendants or their attorneys in either 1954 or 1959 which would make the prosecution of the Interference 87,456 improper.

I conclude that McCullough is not entitled to any recovery from the corporate defendants or Scherbatskoy in this action. I conclude that defendants and counterclaimants Pan Geo Atlas Corporation and PGAC Development Company are not entitled to any recovery from McCullough and Scherbatskoy on their counterclaims. I conclude that Scherbatskoy is not entitled to any recovery from the corporate defendants on his counterclaim.

Counsel for Pan Geo Atlas Corporation and PGAC Development Company will draft an appropriate judgment in accordance with this Memorandum and Order for submission to the Court by March 17, 1969, after first obtaining approval of opposing counsel.